UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HARRY SAVOY,                                        CIVIL ACTION
    Plaintiff

VERSUS                                             No. 12-167

SWIFT ENERGY OPERATING CO., et al.,                SECTION "E"
    Defendants

## ORDER AND REASONS

Before the Court is plaintiff Harry Savoy's ("Savoy") Motion for Remand.[1]  For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND AND PROCEDURAL HISTORY

This dispute arises out of injuries allegedly suffered by Savoy on or about December 21, 2010.  At the time of the accident, Savoy was employed as a wireline helper by Quality Wireline Services, Inc. ("QWS"), tasked with performing wireline work on the CM-185 well in Lake Washington Field in Southeast Louisiana.  The Lake Washington Field is owned and operated by defendant Swift Energy Operating Co., Inc. ("Swift").  Savoy alleges that he fell through a rotten grate while working on the CM-185 wellhead and suffered injuries as a result of the "solidary negligence, strict liability, and otherwise fault" of Swift and Bryan Ragas ("Ragas"), a Swift production superintendent.[2]

On December 20, 2011, Savoy filed a petition for damages against Swift and Ragas in the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana.[3]  On

---

[1] R. Doc. 7.

[2] *See* R. Doc. 1-1 (Savoy's Petition for Damages).

[3] R. Doc. 1-1.

January 20, 2012, Swift removed this action to this Court.[4]  On January 23, 2012, while this action was pending in Section "C" of this Court, Judge Berrigan issued an Order, ordering the parties to file memoranda directed at the issue of whether the "jurisdictional minimum" existed at the time of removal.[5]  Swift responded to this order, filing a supplemental memorandum on February 24, 2012.[6]  Savoy filed this motion to remand on February 16, 2012.[7]  Swift filed an opposition on March 6, 2012.[8]

## ARGUMENTS OF THE PARTIES

I.    Swift's Notice of Removal

Swift's Notice of Removal argues that this Court has subject matter jurisdiction over this matter.  Swift states that there is complete diversity of citizenship, as Swift is a citizen of Texas and Savoy is a citizen of Louisiana.  Swift argues that the citizenship of Ragas, who is a citizen of Louisiana, should be ignored, because he was improperly joined as a defendant in this action.  Swift argues that the nature and extent of damages alleged by Savoy are proof that the amount in controversy exceeds $75,000.

II.    Savoy's Motion for Remand

Savoy argues that he and Ragas are both citizens of Louisiana, and thus that the Court does not have jurisdiction over this matter.  He also argues that Ragas was properly joined in this matter, as he was Swift's supervisor for the Lake Washington Field and the

---

[4] R. Doc. 1.

[5] R. Doc. 5.

[6] R. Doc. 8.

[7] R. Doc. 7.

[8] R. Doc. 10.

individual in charge of inspections and safety in the field.  Savoy believes that Swift has not shown that Savoy has no arguably reasonable basis for recovery against Ragas and, thus, Swift has not met its heavy burden to prove improper joinder.

To defeat federal jurisdiction, Savoy also argues that Swift has not shown that the amount in controversy exceeds $75,000.  Savoy states that it is too early to make this determination, and that, if his doctors do not recommend surgery for his shoulder injury, it is likely that the amount in controversy will be less than $75,000.  Savoy concludes by stating that an award of "just costs" is warranted should the Court find that this action was improperly removed.

III.   Swift's Opposition to the Motion for Remand

Swift argues that Ragas was improperly joined as a defendant, and thus, that his citizenship should be ignored for purposes of determining whether the Court has subject matter jurisdiction.  In support of its improper joinder theory, Swift argues Ragas cannot be individually liable to Savoy under Louisiana law because the four prerequisites to individual liability under the state's law cannot be satisfied and, as a result, Savoy has no arguably reasonable basis on which to rely in seeking to recover from Ragas.  With respect to the jurisdictional minimum issue, Swift's arguments are contained mostly in its supplemental brief submitted in response to Judge Berrigan's Order, and reincorporated in its opposition to Savoy's motion.  Swift argues that even though Savoy's complaint did not allege a specific amount of damages, Swift has satisfied its burden of showing that the amount in controversy exceeded the jurisdictional minimum at the time of removal.

**ANALYSIS**

I.   Legal Standard

3

Generally, a defendant may remove a civil action from state court to federal court if the federal court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The plaintiff, however, can then make a motion to remand the case back to state court if he believes the case should not have been removed, and remand is proper if at any time the Court lacks subject matter jurisdiction. § 1441(c). Removal statutes must be strictly construed, and any ambiguities of fact and law should be resolved in favor of a party seeking remand. *See, e.g. Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The removing party bears the burden of showing that federal jurisdiction exists, *see e.g. Allen v. R&H Oil and Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995), and for purposes of this question, the Court is only concerned with whether jurisdiction existed at the time of removal. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995). A federal district court has jurisdiction over lawsuits between citizens of different states in which the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. If either of these requirements - the complete diversity requirement or the jurisdictional minimum requirement - is not met, the Court lacks subject matter jurisdiction and remand is proper.

II.   The "Complete Diversity" Requirement

The requirement that the parties in the lawsuit be citizens of different states - the "complete diversity" requirement - means that in a case in which a district court's jurisdiction is based solely on the diversity of the parties, no plaintiff may be a citizen of the same state as any defendant. *Lincoln Property Co. v. Roche,* 546 U.S. 81, 89 (2005). In the removal context, however, there exists a narrow exception to the complete diversity requirement. If a plaintiff names a non-diverse defendant (i.e. a citizen of the same state as the plaintiff), a truly diverse defendant may still validly remove the case to federal court

4

if it can demonstrate that the non-diverse defendant was improperly joined.  *See Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).  To establish improper joinder, the removing party must demonstrate either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005); *citing Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003).  The party claiming improper joinder bears a heavy burden of proof.  *McDonal*, 408 F.3d at 183.

The Court must determine whether Swift has met its heavy burden of establishing that Ragas was improperly joined.  Neither party has contended that there was any actual fraud in Savoy's joinder of Ragas as a defendant, so the Court's inquiry will focus on the question of whether Savoy has an arguably reasonable basis for recovery against Ragas under state law.  As the removing defendant, Swift bears the burden of establishing that the answer to this question is no.  To determine this issue, the Court must decide whether "there is arguably a reasonable basis for predicting that state law might impose liability." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003).  "This means that there must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Id.* (emphasis in original).  While the standard for evaluating a claim of improper joinder is similar to the standard used when evaluating a Rule 12(b)(6) motion for failure to state a claim, the scope of the Court's inquiry is broader that it would be with a Rule 12(b)(6) motion; while the Court will not "pre-try" the case, the Court may, in its discretion, "pierce the pleadings" under certain circumstances and consider summary judgment type evidence to determine whether the plaintiff's claim has a factual basis (i.e. depositions, affidavits, etc.).  *Id.* at 462-63.  The Court's exercise of such discretion is proper when "the plaintiff has stated a claim,

5

but has misstated or omitted discrete facts that would determine the propriety of joinder." *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). This summary inquiry is "appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery" against the non-diverse defendant. *Id.* at 573-74. "[T]he inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.* at 574. The Court must consider any unchallenged factual allegations, including those from the initial complaint, in the light most favorable to the plaintiff, and resolve any state law ambiguities in favor of the plaintiff. *Ross,* 344 F.3d at 462-63.

>    A.    Does Savoy have an Arguably Reasonable Basis to Recover from Ragas Under State Law?

Under Louisiana law, a corporate officer or employee may be held individually liable for injuries to third persons under certain circumstances. *Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir. 1994); *citing Canter v. Koehring*, 283 So. 2d 716, 721 (La. 1973). Indeed, individual liability may be imposed on officers or employees, even if the duty breached arises solely from the employment relationship. *Ford*, 32 F.3d at 936. Liability will be imposed on an employee-defendant if four conditions are established by the plaintiff:

>    1.    The principal or employer owes a duty of care to the third person . . . breach of which has caused the damage for which recovery is sought.
>    2.    This duty is delegated by the principal or employer to the defendant.
>    3.    The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances-whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results

6

> from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

4. With regard to the personal (as contrasted with the technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

*Id.*; *citing Canter*, 283 So. 2d at 271.

Swift argues that, despite Savoy's allegations that Ragas' negligence caused Savoy's injuries, Savoy will not be able to prove that these four elements of the *Canter* test are met with respect to Ragas, and thus that Savoy has no reasonable basis for recovery from Ragas under state law. Savoy counters that, as production superintendent for Swift's wellhead, Ragas was responsible for conducting regular inspections of the facilities (or at least supervising such inspections) and ensuring that all safety and compliance issues were addressed, and that Ragas was the individual charged with hiring and supervising wireline and other employees of independent contractors like Savoy. Savoy argues that Swift owed him a duty of care, that the duty of care was delegated to Ragas, and that Ragas' breach of that duty caused his injuries. Savoy also argues that Ragas owed him a personal duty of care, and that Ragas breached that duty through his own personal fault. As a result, Savoy asserts that he has articulated causes of action against Ragas under La. Civ. Code Art. 2315 and the *Canter* test, and that he has an arguably reasonable basis for recovering from Ragas

7

on those claims.[9]

The Court will consider each of the elements from *Canter* in turn, mindful of the fact that, at this stage, Savoy does not have to prove that the elements of the *Canter* test have been met.  Instead, the burden is on Swift to establish that Savoy does not have an arguably reasonable basis on which to rely in attempting to meet those requirements.  *Ross,* 344 F.3d at 461.

          i.      Did Swift Owe a Duty of Care to Savoy?

As the owner of the wellhead, Swift clearly owed a duty of care to Savoy, even though Savoy was an employee of QWS.  Swift had a responsibility to maintain a safe workplace for not only its own employees, but the employees of its independent contractors.  *See Dupre v. Chevron U.S.A., Inc.,* 20 F.3d 154, 157 (5th Cir. 1994).  Savoy alleges that the breach of this duty of care caused the damages he is seeking to recover.  Savoy has an arguably reasonable basis to establish this element of the *Canter* test.

          ii.      Did Swift Delegate its Duty of Care to Ragas?

Likewise, considering Savoy's unchallenged factual allegations in the light most favorable to Savoy, which the Court must at this point, the Court concludes that Swift delegated to Ragas the duty of care it owed to Savoy.  Indeed, Ragas' unsworn declaration states that the wellhead in question was within his "area of responsibility," and that he had

---

[9] Savoy also claims that Ragas had custody and control over the wellhead, which would make him liable for injuries suffered on the premises under La. Civ. Code Arts. 2317 and 2317.1.  R. Doc. 1-1.  The Court does not address these arguments, however, as Savoy needs only to point to one arguably reasonable basis for recovery under state law against Ragas to defeat Swift's improper joinder claim.  *Rainwater v. Lamar Life Ins. Co.,* 391 F.3d 636, 638 (5th Cir.2004).  It is likely that the result would be the same for these causes of action as for Savoy's more general "negligence" allegations - that is, Swift has failed to carry its heavy burden of showing that Savoy has no arguably reasonable basis for recovering against Ragas on this legal theory.

"overall supervisory duties" over Swift's Lake Washington Field.[10]  Furthermore, Ragas does not declare that he delegated this duty to another employee of Swift or otherwise.  Savoy has an arguably reasonable basis to  establish this element of the *Canter* test against Ragas.

> iii.   Did Ragas Breach his Duty to Savoy Through Personal, as Opposed to Vicarious or Technical, Fault?

Swift argues that, because Ragas was not present at the wellhead on the day of the accident, he cannot be held liable because of his personal, as opposed to vicarious, fault.  For an employee's breach of a duty delegated to him to be considered the personal fault of that employee, the plaintiff must establish that the employee personally failed to discharge his obligation with the degree of care required by ordinary prudence under similar circumstances.  *Ford*, 32 F.3d at 936.  This failure can be due to malfeasance, misfeasance, or nonfeasance, and can include either the failure to act upon knowledge of a risk to others or the failure to exercise ordinary care in discovering and avoiding the risk of harm associated with a breach of a duty.  *Id*.  Ragas claims that he had no personal involvement in the day to day activities at the wellhead site.  While this may indicate a genuine lack of actual knowledge of potentially risky conditions, it does not necessarily mean that Ragas could not reasonably be expected to have personally known of those risks; indeed, his "overall responsibility" would seem to indicate that he has a duty to ensure that such risks were avoided.  Regardless, the Court does not have to resolve this issue at this stage in the proceedings.  The burden is on Swift to establish that Savoy has no arguably reasonable basis for showing that Ragas breached a personal duty to maintain a safe place to work.

The Court has considered Ragas' unsworn declaration submitted by Swift, and finds

---

[10] *See* R. Doc. 10-2.

that it does not contain the kind of precise, undisputed factual evidence required at this early stage in the proceedings for the Court to hold that Savoy would be precluded from establishing this element of the *Canter* test at trial. *See Smallwood*, 385 F.3d at 573-74. Savoy has an arguably reasonable basis for establishing this element of the *Canter* test.

> iv.   Did Ragas Breach the Personal Duty he Owed to Ragas Through Personal Fault, and Not Simply Because of his General Administrative Responsibility?

Under this element of the *Canter* test, a defendant employee cannot be held liable simply because he maintains some general administrative responsibility as a function of his employment. *See Ford*, 32 F.3d at 936. The employee must have a personal duty to the plaintiff, and there must be a connection between that duty and the injuries complained of (i.e. a breach of that duty must have caused the damage). *Id.* Furthermore, an employee cannot be held liable for breaching an otherwise personal duty that has been delegated to some responsible third party, unless the employee knows (or should know) that the duty is being neglected in some way by the delegatee and still fails to cure that risk. *Id.* Under Louisiana law, an employee owes a personal duty to a third party when he has some "direct duty" to that party to provide a safe place to work, including some control over purchase and availability of equipment and supplies. *See Hoerner v. ANCO Insulations, Inc.*, 812 So. 2d 45, 63-64 (La. App. 4 Cir. 2002).

Ragas' declaration states that he was not personally responsible for inspecting individual wellheads, and that he had no personal involvement with the work being performed by QWS on the wellhead on the day of Savoy's accident. Swift states that QWS was performing wireline work on the CM-185 wellhead at the time of the accident and that QWS, as an independent contractor, did not require any supervision by Swift. Importantly,

10

however, Ragas' declaration does not state that he delegated his supervisory duties with respect to the CM-185 wellhead, including safety issues, to anyone else, Swift employee or otherwise. The fact that QWS was an independent contractor working for Swift does not relieve Ragas of the personal duty he owed to workers at the wellhead site.[11] Likewise, the Court need not determine at this stage in the proceedings whether Ragas' lack of personal involvement in the day to day operations of the wellhead means that he owed no direct duty to Swift and QWS employees working on the wellhead. Given the information presented in Swift's opposition to the motion to remand and in Ragas' declaration, Savoy has an arguably reasonable basis for showing that Ragas owed him such a duty and that the breach of that duty caused his accident.

Swift also argues that Ragas' duty to maintain the overall safety of the Lake Washington Field was nothing more than a general administrative responsibility as a function of his employment with Swift, and thus that personal liability cannot be imposed on Ragas for a "breach" of this responsibility. Ragas' statement that he was not present at the site on the day of the accident does not preclude Savoy from establishing that Ragas' duty to him and his fellow QWS employees was a personal duty, and not just a general administrative responsibility. The burden at this stage is on Swift, and it has simply not established that Savoy has no arguably reasonable basis for showing that Ragas' responsibility for the wellhead was a personal duty and not simply a general administrative responsibility. Savoy has an arguably reasonable basis for establishing this element of the

---

[11] Swift argues in its opposition to Savoy's motion to remand that the responsibility for the safety of the wellhead was delegated to QWS. However, this argument does not have any factual support, as Ragas' declaration does not state that the duty was so delegated, and nothing else in the pleadings indicates as much.

*Canter* test.

      B.     Summary Inquiry

Because Swift's notice of removal and opposition to the motion to remand do not clearly establish that Savoy has no arguably reasonable basis for recovery against Ragas, the Court may, in its discretion, pierce the parties' pleadings to identify the presence of concrete and undisputed facts that would otherwise preclude Savoy from any possible recovery against Ragas. *See Smallwood*, 385 F.3d at 574. In this case, Savoy claims that Ragas' negligence caused or contributed to his injuries, but the petition filed in state court does not provide an abundance of detail. As a result, the Court exercised its discretion and conducted a summary judgment type inquiry to determine whether some piece of evidence outside of the pleadings conclusively shows that Savoy does not have a claim against Ragas under Louisiana law. *Id*. The only evidence outside the pleadings available to the Court was the unsworn declaration of Ragas.

Considering this declaration, the Court has found no evidence conclusively showing that Savoy has no claim against Ragas under state law. Swift had the opportunity to present concrete evidence that Ragas owed no personal duty to Savoy or that any duty he had was delegated to another, but it failed to do so. Ragas' unsworn declaration does not reflect that the supervision of the well had been delegated to another person or entity. While it is not clear that Savoy will succeed on his claims against Ragas, this Court's inquiry is only focused on whether or not success is possible, resolving all contested factual issues and state law ambiguities in Savoy's favor, not whether it is probable.

     III.     <u>The Propriety of an Award of "Just Costs" Under § 1447(c)</u>

Under 28 U.S.C. § 1447(c), a plaintiff seeking remand may be entitled to attorney's

fees and other just costs associated with an improvident removal by a defendant.  However, while this statute authorizes the Court to award fees and costs upon remanding a case back to state court, it does not require such an award, and the Court has discretion to determine if the circumstances surrounding the removal were such that an award of fees and costs to the party resisting removal would be warranted.  *See Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000) ("There is no automatic entitlement to an award of attorney's fees. Indeed, the clear language of the statute makes such an award discretionary.").  Swift's decision to remove the case to federal court, while ultimately incorrect, was not so off base or misguided to be characterized as "bad faith" or objectively unreasonable.  As such, an award of costs and fees to Savoy is not appropriate here.

IV.   Conclusion

Swift has failed to carry its burden of demonstrating that Savoy has no arguably reasonable basis for establishing the four requirements of the *Canter* test for imposing personal liability on Ragas.  As a result, Swift has failed to carry its heavy burden of showing that Ragas was improperly joined as a defendant in this matter.  The Court cannot ignore Ragas' state of citizenship, and it is clear that the "complete diversity" requirement for this Court to maintain subject matter jurisdiction is lacking.  The Court need not address the issue of whether the amount in controversy exceeded the jurisdictional minimum at the time of removal.  Without jurisdiction over the subject matter, the Court must not take further action, and remand is proper.

Accordingly, **IT IS ORDERED** that Savoy's Motion to Remand be and hereby is **GRANTED IN PART.**

**IT IS FURTHER ORDERED** that this action be and hereby is **REMANDED** to

the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana.

**IT IS FURTHER ORDERED** that Savoy's Motion to Remand, to the extent that it seeks an award of "just costs" under 28 U.S.C. § 1447(c), be and hereby is **DENIED**.

New Orleans, Louisiana, this <u>20th</u> day of June, 2012.

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

14